IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| DENNIS WEINER, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | 1:25-CV-438-RP |
| | § | |
| ROUND ROCK INDEPENDENT SCHOOL | § | |
| DISTRICT and HAFEDH AZAIEZ, *in his* | § | |
| *official capacity as Superintendent of Round Rock* | § | |
| *Independent School District*, | § | |
| | § | |
| Defendants. | § | |

## AMENDED ORDER

Before the Court is Defendant Round Rock Independent School District's ("RRISD")

Motion to Dismiss, (Dkt. 11), Plaintiff Dennis Weiner's ("Plaintiff") response to RRISD's motion,

(Dkt. 17), and RRISD's reply, (Dkt. 21). Also before the Court is Defendant Hafedh Azaiez's

("Azaiez") Motion to Dismiss, (Dkt. 10), Plaintiff's response to Azaiez's motion, (Dkt. 18), and

Azaiez's reply, (Dkt. 22). Having considered the parties' submissions, the record, and the applicable

law, the Court will grant in part and deny in part RRISD's motion, (Dkt. 11), and grant Azaiez's

motion, (Dkt. 10).

## I. BACKGROUND

On August 1, 2023, Plaintiff began his service as Chief of Police of RRISD. (Am. Compl.,

Dkt. 7, at 2). Plaintiff alleges that the position of Chief of Police of RRISD included overseeing the

police, mental health, school safety and security, and risk management departments of the school

district. (*Id.* at 2–3). Plaintiff contends that the scope of his law enforcement activities as Chief of

Police of RRISD is determined by the RRISD Board, but "the law states that he reports to the

Superintendent, and only the Superintendent," citing to Section 37.081(f) of the Texas Education

Code. (*Id.* at 3). Per the allegations of Plaintiff's First Amended Complaint, Azaiez was RRISD's Superintendent at all times relevant to this action. (Am. Compl., Dkt. 7).

Shortly after the beginning of his tenure, on September 13, 2023, Plaintiff met with Azaiez and RRISD's Senior Chief of Schools. (*Id.*). During that meeting, Plaintiff alleges the Senior Chief of Schools "attempted to assume the direction and management of the police department," which Plaintiff reported to Azaiez would be a violation of Section 37.081 of the Texas Education Code. (*Id.*). On September 21, 2023, Plaintiff communicated his concerns to "two local ISD police chiefs to gain advice on handling the situation." (*Id.*). Several days later, Plaintiff alleges "he received notice of multiple anonymous allegations against him." (*Id.*). On November 8, 2023, Plaintiff received a summary of the school district's "findings" related to the notice of allegations he had received on September 28, 2023. (*Id.*). Plaintiff responded to that summary and submitted a request for the "underlying data and documents," which Plaintiff contends "went unanswered." (*Id.*). Plaintiff also alleges that he or others present when some of the actions allegedly took place were never interviewed regarding the allegations. (*Id.*). Nevertheless, Plaintiff submitted another response to the summary of findings on December 6, 2023. (*Id.* at 4).

On December 15, 2023, Plaintiff met with Azaiez, RRISD's Senior Chief of Schools, and RRISD's Chief of Human Resources to "report[] his concerns with violations of [Texas] Family Code 261.101 (Mandatory Reporting) and [Texas] Penal Code 38.15 (Interference with Public Duties)" and tell the RRISD officials that "he found the issues to be systematic, violative of the law, and requiring immediate action by district leadership to correct." (*Id.*). Plaintiff alleges "these issues were longstanding, dating back years before [Plaintiff] was hired" and that he later learned from RRISD families that "school personnel had engaged in a pattern of failing to report child abuse or neglect, with no action by [Azaiez]." (*Id.*). During the months of January and February 2024, Plaintiff alleges that the mental health and school safety and security departments were removed

from his responsibilities and transferred to the Senior Chief of Schools. (*Id.*). On February 28, 2024, Plaintiff contends that Azaiez "presented [Plaintiff] with a conference notes memo containing the results of a survey describing the police department as 'toxic' and 'full of drama.'" (*Id.*).

On April 12, 2024, Plaintiff reports that a sexual assault occurred on a district school bus between an eleven-year-old male offender and a five-year-old female victim. (*Id.*). Plaintiff alleges that the RRISD police department was not "notified of this crime until late in the day of April 15, 2024, after RRISD already took disciplinary action against the perpetrator." (*Id.* at 4–5). Upon learning of this incident, Plaintiff alleges he "immediately ordered an investigation" and that on April 17, 2024, he "raised concerns to Azaiez about RRISD's delayed notification and interference that police investigators were receiving from staff, but Azaiez . . . never acknowledged this email." (*Id.* at 5). On April 30, 2024, Plaintiff alleges he sent "a letter to Azaiez stating that he referred an investigation into the delayed and non-reporting of the sexual assault-related crimes, as well as interference with police duties, to the Texas Attorney General's office." (*Id.*).

Two weeks later, on May 14, 2024, Plaintiff received a letter from Azaiez placing him on administrative leave with pay through June 28, 2024, as well as a letter stating that his contract as Chief of Police of RRISD would not be renewed. (*Id.*). Plaintiff alleges that two days later, on May 16, 2024, "there were reports in the local media describing the culture of the [RRISD] police department as 'toxic' and 'full of drama,' language that matches the terminology used in Azaiez's November 8, 2023, and February 28, 2024, letters to [Plaintiff]." (*Id.*). On or around May 28, 2024, Plaintiff filed a Level 1 Grievance with RRISD, which he agreed to postpone at RRISD's request. As of April 28, 2025, the date Plaintiff filed his amended complaint with this Court, the grievance has not resumed. (*Id.*).

Based on these allegations, Plaintiff first brought an action against RRISD and Azaiez (together, "Defendants") in the 455th Judicial District Court in Travis County on November 18,

3

2024. (Not. Removal, Dkt. 1-3). Defendants removed the case to this Court on March 25, 2025. (Not. Removal, Dkt. 1). Plaintiff filed an amended complaint against Defendants on April 28, 2025. (Dkt. 7). Plaintiff asserts declaratory judgment claims against RRISD under 28 U.S.C. §§ 2201 and 2202 for alleged violations of: (1) Texas Government Code §§ 614.022 and 614.023; (2) the due process clause of the U.S. Constitution; (3) the due course of law clause of the Texas Constitution; (4) the Texas Whistleblower Act ("TWA"); (5) Chapter 261 of the Texas Family Code; and (6) the equal protection clauses under the U.S. and Texas constitutions. (Am. Compl., Dkt. 7, at 5–9, 24–27). Plaintiff alleges First and Fourteenth Amendment violations under 42 U.S.C. § 1983 against both RRISD and Azaiez. (*Id.* at 9–13). Plaintiff also alleges claims of retaliation under the TWA, (*id.* at 13–18), against RRISD; retaliation under the Texas Family Code, (*id.* at 19–22), against RRISD; and claims of *ultra vires* actions against Azaiez, (*id.* at 22–24).

RRISD filed a motion to dismiss certain claims against it under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).[1] (RRISD Mot. to Dismiss, Dkt. 11). Azaiez filed a motion to dismiss challenging Plaintiff's 42 U.S.C. § 1983 claim against him and three of the thirteen bases of Plaintiff's *ultra vires* claims. (Azaiez Mot. to Dismiss, Dkt. 12). Azaiez does not challenge the remaining ten bases for Plaintiff's *ultra vires* claims. (*Id.* at 2). Plaintiff responded to both motions to dismiss, (Dkts. 17, 18), and each Defendant replied in turn. (Dkts. 21, 22).

## II. LEGAL STANDARDS

Federal Rule of Civil Procedure 12(b)(1) allows a party to assert lack of subject-matter jurisdiction as a defense to suit. Fed. R. Civ. P. 12(b)(1). Federal district courts are courts of limited

---

[1] The Court notes its understanding that RRISD's Motion to Dismiss does not appear to seek dismissal of Plaintiff's first cause of action (Declaratory Judgment Under 28 U.S.C. § 2201 and 2202 for Violations of Tex. Gov't Code §§ 614.022 & 614.023, Due Process, and Due Course of Law), or part of Plaintiff's sixth cause of action (Declaratory Judgment Under 28 U.S.C. § 2201 and 2202 for Violations of the Due Process, Due Course of Law, and Equal Protection Constitutional Protections *only*). (RRISD Mot. to Dismiss, Dkt. 11). Therefore, the Court does not further analyze those claims.

jurisdiction and may only exercise such jurisdiction as is expressly conferred by the Constitution and federal statutes. *Kokkonen v. Guardian Life Ins. of Am.*, 511 U.S. 375, 377 (1994). A federal court properly dismisses a case for lack of subject matter jurisdiction when it lacks the statutory or constitutional power to adjudicate the case. *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998). "The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). "Accordingly, the plaintiff constantly bears the burden of proof that jurisdiction does in fact exist." *Id.* In ruling on a Rule 12(b)(1) motion, the court may consider any one of the following: (1) the complaint alone; (2) the complaint plus undisputed facts evidenced in the record; or (3) the complaint, undisputed facts, and the court's resolution of disputed facts. *Lane v. Halliburton*, 529 F.3d 548, 557 (5th Cir. 2008).

Federal Rule of Civil Procedure 12(b)(6) allows a court to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In deciding a 12(b)(6) motion, a "court accepts 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)). "To survive a Rule 12(b)(6) motion to dismiss, a complaint 'does not need detailed factual allegations,' but must provide the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'" *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). That is, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).

A claim has facial plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The

5

tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* A court ruling on a 12(b)(6) motion may rely on the complaint, its proper attachments, "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Dorsey v. Portfolio Equities, Inc.,* 540 F.3d 333, 338 (5th Cir. 2008) (citations and internal quotation marks omitted). A court may also consider documents that a defendant attaches to a motion to dismiss "if they are referred to in the plaintiff's complaint and are central to her claim." *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004). But because the court reviews only the well-pleaded facts in the complaint, it may not consider new factual allegations made outside the complaint. *Dorsey,* 540 F.3d at 338. "[A] motion to dismiss under 12(b)(6) 'is viewed with disfavor and is rarely granted.'" *Turner v. Pleasant*, 663 F.3d 770, 775 (5th Cir. 2011) (quoting *Harrington v. State Farm Fire & Cas. Co.*, 563 F.3d 141, 147 (5th Cir. 2009)).

## III. DISCUSSION

### A. RRISD's Motion to Dismiss

RRISD argues that the Court should dismiss Plaintiff's First Amendment retaliation claim against RRISD because "he did not plead a policy, custom, or practice of the District that allegedly harmed him, he was not engaged in speech on matters of public concern as a citizen as all of his speech was part of his job duties, he did not plead a causal connection between his speech and adverse employment actions, and (other than with regard to his contract non-renewal) did not plead a qualifying adverse employment action." (RRISD Mot. to Dismiss, Dkt. 11, at 2).

RRISD also argues that the Court should dismiss Plaintiff's declaratory judgment claims based on the TWA and Texas Family Code § 261.110 under Rules 12(b)(1) and 12(b)(6) because Plaintiff has not pled the jurisdictional facts required for a waiver of RRISD's governmental

immunity and therefore the Court lacks jurisdiction over those claims. (*Id.* at 1–2). As such, RRISD contends the Court should also dismiss Plaintiff's TWA and Texas Family Code § 261.110 retaliation claims for failure to state claims upon which relief can be granted. (*Id.* at 2).

### 1. Plaintiff's First and Fourteenth Amendment Violation Claims under 42 U.S.C. § 1983 (Count Two)

### a. First Amendment Violation

Plaintiff alleges a claim pursuant to 42 U.S.C. § 1983 for violations of his First Amendment rights, made applicable to RRISD through the Fourteenth Amendment. He alleges that RRISD retaliated against him for exercising his constitutional right to free speech. (Am. Compl., Dkt. 7, at 12). "The [Supreme] Court has made clear that public employees do not surrender all their First Amendment rights by reason of their employment." *Garcetti v. Ceballos*, 547 U.S. 410, 417 (2006). "To establish a prima face First Amendment retaliation claim, a public employee must show, *inter alia*, that [s]he spoke as a citizen, and not as a public employee." *Paske v. Fitzgerald*, 785 F.3d 977, 983–84 (5th Cir. 2015). If that threshold question is met, then Plaintiff must show: (1) he suffered an adverse employment decision; (2) his speech involved a matter of public concern; (3) his interest in the speech outweighed RRISD's interest in promoting efficiency; and (4) his speech motivated the adverse employment action. *Haverda v. Hays Cnty.*, 723 F.3d 586, 591 (5th Cir. 2013).

"An employee is not speaking as a citizen—but rather in [her] role as an employee—when [s]he 'make[s] statements pursuant to [her] official duties.'" *Nixon v. City of Houston*, 511 F.3d 494, 497 (5th Cir. 2007) (quoting *Garcetti*, 547 U.S. at 421). An employee's official duties are not necessarily defined by a job description and are not limited to the subject matter of one's employment. *Garcetti*, 547 U.S. at 421–22. "Activities undertaken in the course of performing one's job are activities pursuant to official duties," even if the employee is not required to undertake the activity. *Williams v. Dallas Indep. Sch. Dist.*, 480 F.3d 689, 693 (5th Cir. 2007).

RRISD argues that Plaintiff's speech was not protected because all his cited instances of protected speech were made in the course of performing his official duties. (RRISD Mot. to Dismiss, Dkt. 11, at 18–19). RRISD also argues that Plaintiff did not plead either an adverse employment action or a causal connection between his alleged speech and an adverse employment action. (*Id.*) Plaintiff responds that he "met his burden to plead speech outside of his official duties by alleging that his complaints were raised externally to the Attorney General," as well as his burden to plausibly allege a causal causation between his alleged speech and an adverse employment action. (Resp. to RRISD Mot. to Dismiss, Dkt. 17, at 16–17).

In his First Amended Complaint, Plaintiff points to five instances from his allegations in which he engaged in protected speech. (Am. Compl., Dkt. 7, at 9–10). Four of those instances describe occasions in which Plaintiff spoke to Azaiez and other RRISD officials, including the Senior Chief of Schools and the Chief of Human Resources. In the fifth instance, Plaintiff describes the letter he submitted to Azaiez giving him notice that Plaintiff "referred an investigation regarding interference with police duties and the delayal and non-reporting of crimes to the Texas Attorney General's Office." (Am. Compl., Dkt. 7, at 10). The Court finds that the first four instances Plaintiff cites to constitute activities undertaken in the course of performing Plaintiff's job, thereby making his speech unprotected. *Williams*, 480 F.3d at 693. Indeed, as RRISD points out, Plaintiff states in his First Amended Complaint: "A Chief of Police's ability and freedom to criticize actions and proposed actions that violate law is an essential function, if not the core purpose, of a Chief of Police's duties." (Am. Compl., Dkt. 7, at 12). But, at this early pleading stage, the Court finds it plausible that Plaintiff's referral of an investigation to the Texas Attorney General's Office was protected speech as a private citizen. "If . . . a public employee takes his job concerns to persons outside the work place in addition to raising them up the chain of command at his workplace, then those external

8

communications are ordinarily not made as an employee, but as a citizen." *Davis v. McKinney*, 518 F.3d 304, 313 (5th Cir. 2008) (citing *Freitag v. Ayers,* 468 F.3d 528 (9th Cir. 2006)).

As noted above, Plaintiff has alleged that he was subject to several plausible adverse employment actions including receiving a summary of multiple anonymous allegations against him, a reduction in the scope of his authority and duties, placement on administrative leave, and non-renewal of his contract. (Am. Compl., Dkt. 7, at 10–11). *See Bonillas v. Harlandale Indep. Sch. Dist.*, 832 F. Supp. 2d 729, 741 (W.D. Tex. 2011) (listing "a written reprimand, a poor performance evaluation, and nonrenewal of her contract" as proper allegations of adverse employment actions for the purposes of a First Amendment retaliation claim). "Adverse employment actions can include discharges, demotions, refusals to hire, refusals to promote, and reprimands." *Sharp v. City of Houston*, 164 F.3d 923, 933 (5th Cir. 1999). Further, the Court finds that Plaintiff's complaints about alleged violations of state law and a mishandled investigation of the sexual assault of a minor are plausibly matters of public concern that outweigh RRISD's interest in promoting efficiency. The Court also finds that RRISD's bare argument that Plaintiff did not plead a causal connection between his alleged speech and an adverse employment action is not convincing at this stage and that Plaintiff has indeed plausibly alleged a series of events leading to the non-renewal of his contract. (Resp. to RRISD's Mot. to Dismiss, Dkt. 17, at 17). Therefore, construing all facts in favor of Plaintiff, the Court finds that he has stated a First Amendment retaliation claim sufficient to survive RRISD's motion to dismiss.

### b. Municipal Liability under 42 U.S.C. § 1983

RRISD argues that Plaintiff may not use § 1983 to allege RRISD's liability for a First Amendment violation because he "offered no well-pled allegations concerning the District's policymaker, the Board of Trustees, nor did he specifically identify, in a non-conclusory manner, any policy that the District's Board of Trustees officially adopted or promulgated." (RRISD Mot. to

Dismiss, Dkt. 11, at 18). To establish municipal liability under § 1983, a plaintiff must show that an official policy promulgated by the municipal policymaker was the moving force behind the violation of a constitutional right. *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001). "In addition to officially adopted policy statements, regulations, ordinances, or decisions, an official policy may be established by proof of a persistent, widespread practice . . . which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy." *Bonillas*, 832 F. Supp. 2d at 743 (quoting *Webster v. City of Houston,* 735 F.2d 838, 841 (5th Cir. 1984) (citing 42 U.S.C. § 1983)) (quotation marks omitted).

"[W]hether an official had final policymaking authority is a question of state law." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986). "Texas law is clear that final policymaking authority in an independent school district . . . rests with the district's board of trustees." *Doe v. Edgewood Indep. Sch. Dist.*, 964 F.3d 351, 365 (5th Cir. 2020) (quoting *Jett v. Dall. Indep. Sch. Dist.*, 7 F.3d 1241, 1245 (5th Cir. 1993)). At the motion to dismiss stage, a plaintiff does not need to conclusively identify a single policymaker. *See Groden v. City of Dall.*, 826 F.3d 280, 284–85 (5th Cir. 2016) ("[C]ourts should not grant motions to dismiss for failing to plead the specific identity of the policymaker."). To survive a motion to dismiss, a plaintiff "need[] only to plead facts . . . which establish that the challenged policy was promulgated or ratified by the [municipality's] policymaker." *Id.*

For Plaintiff to properly allege a § 1983 claim against RRISD for a violation of his First Amendment rights, he would have to plead an official policy of retaliation in violation of the First Amendment by the municipal policymaker, not an official policy of failing to report child abuse or neglect.[2] In the alternative, "municipal liability may [also] be imposed for a single decision by

---

[2] In his First Amended Complaint, and again in his response to RRISD's Motion to Dismiss, Plaintiff alleges that on December 15, 2023, Plaintiff told Azaiez, RRISD's Senior Chief of Schools, and RRISD's Senior Chief of Human Resources that he found the violations of Texas Family Code Chapter 261 and Texas Penal Code 38.15 at RRISD to be "systematic, violative of the law, and requiring immediate action by district leadership to correct" and that "these issues were longstanding" because "[a]s [Plaintiff] later learned from

municipal policymakers under appropriate circumstances." *Pembaur*, 475 U.S. at 480. "It is well-established that a single unconstitutional action by a municipal actor may give rise to municipal liability if that actor is a *final policymaker*." *Bolton v. City of Dall.*, 541 F.3d 545, 548 (5th Cir. 2008) (emphasis added). Here, Plaintiff fails to plead that the decision to not renew his contract, motivated by retaliation in violation of the First Amendment, was recommended or ratified by the final policymaker of RRISD, the Board of Trustees. Plaintiff also fails to plead facts suggesting that Board of Trustees may have approved of a subordinate's—such as Azaiez—recommendation and reasoning to not renew his contract. *See, e.g.*, *Culbertson v. Lykos*, 790 F.3d 608, 621 (5th Cir. 2015) ("If a final policymaker approves a subordinate's recommendation and also the subordinate's reasoning, that approval is considered a ratification chargeable to the municipality."); *see also Beattie v. Madison Cty. Sch. Dist.*, 254 F.3d 595, 603 (5th Cir. 2001) (stating that a plaintiff "must impute [a subordinate's] allegedly improper motives to the board by demonstrating that the board approved both [the subordinate's] decision and the basis for it"). Having considered these theories of establishing an official policy promulgated by the municipal policymaker, the Court finds Plaintiff fails to plead a § 1983 claim against RRISD. Therefore, RRISD's motion to dismiss Plaintiff's § 1983 claim is granted.

### 2. Plaintiff's Declaratory Judgment Claim for Alleged Violations of the TWA (Count Six) and Retaliation Claim under the TWA (Count Three)

The Declaratory Judgment Act ("DJA") states:

> In a case of actual controversy within its jurisdiction . . . any court of the United States, upon filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

---

families in the District, school personnel had engaged in a pattern of failing to report child abuse or neglect, with no action by the Superintendent." (Am. Compl., Dkt. 7, at 4; Resp. to RRISD Mot. to Dismiss, Dkt. 17, at 15).

28 U.S.C. § 2201(a). The DJA does not itself provide a basis for federal jurisdiction nor does it create a substantive cause of action. *Id.*; *see Schilling v. Rogers*, 363 U.S. 666, 677 (1960). Rather, "[a] declaratory judgment action is merely a vehicle that allows a party to obtain an 'early adjudication of an actual controversy' arising under other substantive law." *MetroPCS Wireless, Inc. v. Virgin Mobile USA, L.P.*, No. 3:08–CV–1658–D, 2009 WL 3075205, at *19 (N.D. Tex. Sept. 25, 2009) (quoting *Collin Cty. v. Homeowners Ass'n for Values Essential to Neighborhoods*, 915 F.2d 193, 194 (5th Cir. 1991)).

RRISD argues that there is no waiver of RRISD's governmental immunity for Plaintiff's TWA claims, so Plaintiff cannot seek declaratory relief under the DJA for those state law claims. (RRSID Mot. to Dismiss, Dkt. 11, at 7). RRISD explains that there is a limited waiver of immunity in the TWA allowing for a plaintiff to sue under the waiver only if they have pled the *prima facie* elements of a violation of the act. (*Id.* at 7). Under the TWA, a plaintiff must plead that he "(1) reported (2) a violation of law by the employer or another public employee (3) to an appropriate law enforcement authority, (4) the report was made in good faith, and (5) the adverse action would not have occurred when it did if the employee had not reported the illegal conduct." *City of Fort Worth v. Pridgen*, 653 S.W.3d 176, 182 (Tex. 2022) (citing Tex. Gov't Code § 554.002(a) (TWA)). Section 554.002(b) of the TWA defines an appropriate law enforcement authority as one that "is a part of a state or local governmental entity or of the federal government that the employee in good faith believes is authorized to: (1) regulate under or enforce the law alleged to be violated in the report; or (2) investigate or prosecute a violation of criminal law." Tex. Gov't Code § 554.002(b). "When an employee reports wrongdoing internally with the knowledge that the report will have to be forwarded elsewhere for regulation, enforcement, investigation, or prosecution, then the employee is not reporting '*to* an appropriate law enforcement authority.'" *Tex. Dep't of Hum. Servs. v. Okoli*, 440 S.W.3d 611, 615 (Tex. 2014) (citing Tex. Gov't Code § 554.002) (emphasis in original). Finally, "for a personnel action to be adverse within the meaning of the [TWA], it must be material, and thus likely

to deter a reasonable, similarly situated employee from reporting a violation of the law." *Montgomery Cnty. v. Park*, 246 S.W.3d 610, 612 (Tex. 2007).

The Court agrees that to maintain a suit under the TWA against an entity that ordinarily enjoys governmental immunity, jurisdiction is established only if the plaintiff pleads the *prima facie* elements of the claim. *State v. Lueck*, 290 S.W.3d 876, 881 (Tex. 2009). Here, Plaintiff "sues RRISD for retaliation under the [TWA] because it suspended or terminated his employment as a result of his **three** good faith reports of violations of the law." (Am. Compl., Dkt. 7, at 13) (emphasis in original). RRISD argues that each of Plaintiff's alleged good faith reports of violations of the law do not adequately plead the *prima facie* elements of a TWA claim. (RRISD Mot. to Dismiss, Dkt. 11, at 8–11).

Accepting all well-pleaded facts as true and viewing them in the light most favorable to Plaintiff, the Court finds that Plaintiff pled a plausible claim under the TWA using two of his alleged good faith reports of violations of the law. Plaintiff's TWA claim is "based upon three violations of the law by RRISD: (1) retaliation related to RRISD's illegal attempt to give the Chief of Schools authority over the police department; (2) systemic violations of Chapter 261 of the Texas Family Code and interference with police investigations; and (3) violations of Chapter 261 of the Texas Family Code related to a child sexual assault on April 12, 2024." (Resp. to RRSID Mot. to Dismiss, Dkt. 17, at 2). The Court agrees with RRISD that the third violation of the law Plaintiff alleges does not constitute a TWA claim on its face because Plaintiff did not plead that he reported a violation of law to an appropriate law enforcement agency, as his allegations only refer to "ma[king] a good faith report to Azaiez" and "submit[ting] a letter to Azaiez giving notice" that he had referred an investigation to the Texas Attorney General's Office. (RRISD Mot. to Dismiss, Dkt. 11, at 11; Am. Compl., Dkt. 7, at 17–18). The Supreme Court of Texas has held that in the context of TWA claims against school districts, complaints to school district officials do not constitute complaints to an

appropriate law enforcement agency because "lodging an internal complaint to an authority whom one understands to be only charged with internal compliance, even including investigating and punishing noncompliance, is jurisdictionally insufficient under the [TWA]." *Canutillo Indep. Sch. Dist. v. Farran*, 409 S.W.3d 653, 655 (Tex. 2013) (citing *Univ. of Tex. Sw. Med. Ctr. at Dall. v. Gentilello*, 398 S.W.3d 680, 687 (Tex. 2013)). Plaintiff includes a footnote in his response to RRISD's Motion to Dismiss that he "also made a report to the Williamson County Attorney and Texas Education Association" of this violation of the law. (Resp. to RRSID Mot. to Dismiss, Dkt. 17, at 11 n.42). Plaintiff did not plead this fact in his First Amended Complaint, so the Court cannot consider it at the motion to dismiss stage. *See Dorsey,* 540 F.3d at 338.

The Court does find, however, that Plaintiff's first and second alleged good faith reports of violations of the law to other chiefs of ISD police departments and the Texas Attorney General's Office, respectively, plausibly constitute a claim upon which relief can be granted. Given the TWA's definition of an appropriate law enforcement authority as one that "is a part of a state or local governmental entity or of the federal government that the employee *in good faith believes* is authorized to: (1) regulate under or enforce the law alleged to be violated in the report; or (2) investigate or prosecute a violation of criminal law," the Court finds it plausible at this stage that Plaintiff's reports to both the other chiefs of ISD police departments and the Texas Attorney General's Office may constitute a claim upon which relief can be granted. Tex. Gov't Code § 554.002(b) (emphasis added). The Court further finds Plaintiff plausibly pled that his reports of violations of the law were made in good faith and that adverse actions would not have occurred if Plaintiff had not reported the violations of the law.

Therefore, Plaintiff's TWA retaliation claim against RRISD—for his alleged good faith reports of violations of the law to the other chiefs of ISD police departments and the Texas

Attorney General's Office, respectively—as well as his claim under the DJA for the same may proceed against RRISD.

### 3. Plaintiff's Declaratory Judgment Claim for Alleged Violation of Texas Family Code § 221.110 (Count Six) and Retaliation Claim under Texas Family Code § 221.110 (Count Four)

RRISD argues that there is no waiver of RRISD's governmental immunity for Plaintiff's claim under Texas Family Code § 261.110 because § 261.110(l) specifically mandates that "[a] public employee who has a cause of action under [the TWA] based on conduct described by Subsection (b) may not bring an action based on that conduct under this section." (RRISD Mot. to Dismiss, Dkt. 11, at 12). Plaintiff responds that "Federal Rule[] of Civil Procedure 8(d)(2) specifically allows a party to set two or more statements of a claim alternatively or hypothetically, in separate counts, and the pleading will be sufficient if any one of them is sufficient." (Resp. to Mot. to Dismiss, Dkt. 17, at 12). Plaintiff also argues that § 261.110(l) is an election of remedies provision rather than a bar to suit. (*Id.* at 12–13).

The Texas Supreme Court has found that "[the Texas] Family Code prohibits bringing causes of action under both the Family Code and [the TWA]." *Harris County v. Norris*, 240 S.W.3d 255, 257 n.4 (Tex. App.—Houston [1st Dist.] 2006, pet. denied). Federal courts are courts of limited jurisdiction, and § 261.110(l) seemingly presents a mandate closer to a bar to suit than an election of remedies provision. As such, the Court must dismiss Plaintiff's DJA claim for an alleged violation of Texas Family Code § 221.110 and Plaintiff's retaliation claim under § 221.110 for lack of subject matter jurisdiction under Rule 12(b)(1). *See Doe as Next Friends of Doe 1 v. Prosper Indep. Sch. Dist.*, No. 4:22-CV-814, 2025 WL 2966690, at *2–4 (E.D. Tex. Oct. 20, 2025). The Court, therefore, does not reach RRISD's arguments for dismissal of Plaintiff's claims under Texas Family Code § 221.110 under Rule 12(b)(6).

**B. Azaiez's Motion to Dismiss**

Azaiez challenges Plaintiff's 42 U.S.C. § 1983 claim against him and three of the thirteen bases of Plaintiff's *ultra vires* claims. (Azaiez Mot. to Dismiss, Dkt. 10). Azaiez does not challenge the remaining ten bases for Plaintiff's *ultra vires* claims. (*Id.* at 2). Plaintiff responded to Azaiez's motion, (Dkt. 18), and Azaiez replied in turn. (Dkt. 22).

**1. Plaintiff's 42 U.S.C. § 1983 Claim (Count Two)**

Azaiez contends that the Court should dismiss Plaintiff's 42 U.S.C. § 1983 claim against him—in his official capacity—because it is duplicative of Plaintiff's identical claim against RRISD. (Azaiez Mot. to Dismiss, Dkt. 10, at 1). Plaintiff argues that the holding Azaiez relies on to make the argument that a duplicative claim in this context should be dismissed does not apply to school districts. (Resp. to Azaiez Mot. to Dismiss, Dkt. 18, at 2).

"[A] suit against a governmental officer 'in his official capacity' is the same as a suit 'against [the] entity of which [the] officer is an agent[.]'" *McMillian v. Monroe County*, 520 U.S. 781, 785 n.2 (1997) (quoting *Kentucky v. Graham*, 473 U.S. 159, 165 (1985)). In a suit against a government entity's officer in his official capacity as well as that entity, as is the case here, "[t]he official-capacity claims and the claims against the governmental entity essentially merge." *Turner v. Houma Mun. Fire and Police Civ. Serv. Bd.*, 229 F.3d 478, 485 (5th Cir. 2000). The Fifth Circuit has affirmed the dismissal of official capacity claims via a 12(b)(6) motion because they are duplicative of claims against the governmental entity, including a school district. *Castro Romero v. Becken*, 256 F.3d 349, 355 (5th Cir. 2001); *Clark v. La Marque Indep. Sch. Dist.*, No. 02-40217, 2002 U.S. App. LEXIS 29924, at *2 (5th Cir. Nov. 4, 2002). Therefore, the Court finds that Plaintiff's § 1983 claim against Azaiez in his official capacity should be dismissed as duplicative. Because the Court finds that Plaintiff's § 1983 claim against Azaiez is duplicative and should be dismissed, the Court will not address each party's arguments as to whether Plaintiff plausibly pled the elements of a § 1983 claim against Azaiez.

16

## 2. Plaintiff's *Ultra Vires* Claims (Count Five)

Azaiez also contends that the Court should dismiss three of the bases of Plaintiff's *ultra vires* claims because they are "not based on alleged failures to perform ministerial acts or failure to act without legal authority, as interpreted by the Texas Supreme Court and other courts." (Azaiez Mot. to Dismiss, Dkt. 10, at 2). "Under Texas law, a suit against a government employee in his official capacity is a suit against his government employer with one exception: an action alleging that the employee acted ultra vires." *Franka v. Velasquez*, 332 S.W.3d 367, 383 (Tex. 2011). Governmental immunity does not bar such *ultra vires* claims, but the only remedies available to a successful plaintiff are prospective declaratory and injunctive relief. *City of El Paso v. Heinrich*, 284 S.W.3d 366, 376, 380 (Tex. 2009). To state an *ultra vires* claim, "a suit must not complain of a government officer's exercise of discretion, but rather must allege, and ultimately prove, that the officer acted without legal authority or failed to perform a purely ministerial act." *Id.* at 372. A government official acts *ultra vires* "if he exceeds the bounds of his granted authority or if his acts conflict with the law itself." *Hou. Belt & Terminal Ry. Co. v. City of Houston*, 487 S.W.3d 154, 158 (Tex. 2016). Ministerial acts are those "where the law prescribes and defines the duties to be performed with such precision and certainty as to leave nothing to the exercise of discretion or judgment." *Sw. Bell Tel., L.P. v. Emmett*, 459 S.W.3d 578, 587 (Tex. 2015).

> Azaiez challenges three of Plaintiff's bases for his *ultra vires* claim against Azaiez:
>
> (g) failing to implementing [sic] or failing to monitor RRISD plans, procedures, programs and systems that would stop systemic violations of Section 261.101 of the Texas Family Code and Section 38.15 of the Texas Penal Code to occur;
>
> (h) failing to assure compliance with Section 261.101 of the Texas Family Code and Section 38.15 of the Texas Penal Code by RRISD personnel;
>
> . . .
>
> (m) failing to assure RRISD plans, procedures, programs and systems did not violate constitutional protections of due process, due course of law and equal protection.

17

(Azaiez Mot. to Dismiss, Dkt. 10, at 10–11). Azaiez argues that none of these alleged bases describe ministerial acts because the referenced laws do not prescribe and define duties to be performed "with such precision and certainty as to leave nothing to the exercise of discretion or judgment," and the laws do not refer to school district superintendents specifically. (*Id.* at 11). Azaiez further contends that § 261.101 of the Texas Family Code, § 38.15 of the Texas Penal Code, and the due process, due course of law, and equal protection clauses do not grant school superintendents any authority or impose any affirmative duties on them to complete actions Plaintiff alleges Azaiez failed to. (*Id.*). Plaintiff responds that he adequately met his pleading burdens for these three bases, as Azaiez has mandatory statutory duties he failed to complete. (Resp. to Azaiez Mot. to Dismiss, Dkt. 18, 2–6).

The Court finds that the laws Plaintiff references in ¶¶ 66g, h, and m of his First Amended Complaint do not "prescribe[] and define[] the duties to be performed with such precision and certainty as to leave nothing to the exercise of discretion or judgment." *Sw. Bell Tel., L.P.*, 459 S.W.3d at 587. Sections 261.101 of the Texas Family Code and 38.15 of the Texas Penal Code describe required conduct and duties in broad terms for many individuals, and the due process, due course of law, and equal protection clauses of the Texas Constitution and U.S. Constitution, respectively, provide general assurances as to how the federal and state governments and their agents must treat and protect individuals. Further, the Court agrees with Azaiez that in regard to ¶¶ 66g, h of Plaintiff's First Amended Complaint, "Plaintiff did not plead non-compliance with the actual statutory requirements by the Superintendent," rather, Plaintiff pled that the Superintendent failed to *assure* compliance with the statutory requirements. (Azaiez Reply, Dkt. 22, at 5). The Court also agrees with Azaiez that Plaintiff did not plead facts demonstrating that Azaiez "exceed[ed] the bounds of his granted authority or [his] acts conflict[ed] with the law itself" as to ¶¶ 66g, h, and m of Plaintiff's First Amended Complaint. *Houston Belt & Terminal Ry. Co.*, 487 S.W.3d at 158. For these

18

reasons, the Court finds that the three bases at issue for Plaintiff's *ultra vires* claims against Azaiez should be dismissed.

## IV. CONCLUSION

Pursuant to the Court's findings above, **IT IS ORDERED** that RRISD's Motion to Dismiss, (Dkt. 11), is **GRANTED IN PART AND DENIED IN PART**, as described below:

- Plaintiff's 42 U.S.C. § 1983 claim against RRISD is **DIMISSED WITHOUT PREJUDICE**. If Plaintiff wishes to replead his § 1983 claim against RRISD, he must do so by **January 16, 2026**.

- Plaintiff's DJA claim for an alleged violation of Texas Family Code § 221.110 and retaliation claim under Texas Family Code § 221.110 are both **DISMISSED WITH PREJUDICE**.

- Plaintiff's plausibly pled claims against RRISD described therein may proceed.

**IT IS FURTHER ORDERED** that Azaiez's Motion to Dismiss, (Dkt. 10), is **GRANTED**; therefore, Plaintiff's 42 U.S.C. § 1983 claim against Azaiez in his official capacity is **DISMISSED WITH PREJUDICE** and Plaintiff's *ultra vires* claims may only proceed based on ¶¶ 66a-f, i, and j-l of his First Amended Complaint.

**SIGNED** on December 23, 2025.

_____

ROBERT PITMAN
UNITED STATES DISTRICT JUDGE

19